Superior Consulting vs. Shaklee In this trademark infringement action regarding Shaklee's use of Superior's incontestable health print mark for competing personalized nutritional diet and health analyses, I'll focus my argument today on three errors of law that the trial court made that require reversal. First, the court erred in elevating form over substance in finding that a local rule gotcha constituted an intentional and voluntary waiver of Superior's right to jury trial on its claims for statutory and punitive damages. Despite the party's stipulation to a jury trial, preparation of proposed jury instructions and verdict forms that contemplated a jury trial on all issues so triable. Second, the court erred as a matter of law by giving the most weight to the quote actual confusion factor and the purported lack thereof rather than taking all of the factors together, completely undermining the Lanham Act's likelihood of confusion test and also misapplied the similarity of the products presented factor. Third, the trial court erred as a matter of law in excluding Superior's survey evidence demonstrating actual confusion, where this court's jelly beans precedent counsels that the challenges to survey design made here should go to the weight of the survey and not its admissibility, and in excluding and disregarding Superior's evidence of intent in the form of evidence of Jennifer Steve Kiss's knowledge of Superior's health print marks. I'll start with the jury trial issue, Your Honors, and this is a de novo issue for review. As I'm sure you know, the trial court held that my client waived the right to jury trial by allegedly failing to comply with Local Rule 3.06c by not stating specifically the amount of damages that were sought for the punitive and the statutory damages claims. We believe this is definitely legal. Robert Luck, it wasn't the amount of damages that wasn't there. That's a bit of a mischaracterization. It was when you were asked to list the damages, it wasn't listed that you were seeking statutory damages. You chose the separate remedy of disgorgement and not listing, at least in that section, punitive damages, correct? Those sections were not listed in those sections, but the intention to seek those kinds of damages was throughout the joint pretrial statement, Your Honor. The party stipulated that... Where in the pretrial statement, the joint pretrial statement, the first one, is there any mention of statutory damages? Sure, Your Honor. The mention of statutory damages is in the proposed... So that's not in the joint, that is not in the joint statement or the joint pretrial statement, right? Well, the joint pretrial statement incorporates by reference the proposed jury instructions, proposed things that are incorporated by reference. Counsel, just to be clear, in the pretrial statement, it doesn't mention at all, ever, statutory damages, right? Only in the attachments, Your Honor, which we believe are a part of the document. And more importantly... I'm sorry, go ahead. It does mention punitive damages in the issue section, right? Correct. But not in the section where it says to lay out your damages, right? Correct. It mentions it both as a disputed fact to be litigated at 607 in the appendix, and also there are proposed jury instructions, and it's on the verdict form in two different places at appendix 607. Haven't we said that it is, well, the ultimate question may be de novo, a district court's review of its joint pretrial statement is something that we review for an abuse of discretion, correct? Yes, certainly the interpretation of the pretrial statement can be as an abuse of discretion, but here we believe that the legal error rises to the standard of an abuse of discretion. Especially, by the way, the whole point of this kind of disclosure in the pretrial statement is for notice, and clearly there was notice that this was an issue that was intended to be tried. There's also an amended joint pretrial statement in the appendix at 1243 that, you know, that corrects that error well before trial and puts everybody on notice that that was something that was intended to be sought out. But the amendment was made way after the motion for a bench trial was made at that point, right, or to strike the jury trial notice. It was made after that motion, Your Honor, but it was certainly made well before trial, and that's the point, is to have notice before trial. Except that the rule is quite clear about the purpose of the rule. It's not a notice rule. What it is is that issues are narrowed by that time so that pleadings, which start very broadly after discovery is done, after the parties get together, significantly narrow the issues for the trial court to actually try the case. That's the point, right? And the issues were presented in that joint pretrial statement in the form of the stated jury instructions that addressed both of these issues, the verdict form that addressed these issues. You know, the parties were all very clearly on the same page that these were issues to be tried. What is the trial court to do where it has that statement in the pretrial statement where it says list your damages and it doesn't list those damages, mixed with a prior hearing where the court, trying to get superior to pin down what it's seeking, asked, quote, so you're not going to make any claim at trial for lost profits to superior. Rather, your remedy is the disgorgement remedy. That is correct, Your Honor. We're specifically told that disgorgement is the remedy here, not statutory damages. How is the court not to read that along with what's the pretrial statement to say, you know what, they aren't seeking statutory damages? Well, the disgorgement was the remedy as to one of the claims, but there were multiple claims. This was a six count complaint, Your Honor, and I don't think that narrowing down to one of the claims to be the disgorgement remedy doesn't mean that there's not a separate remedy for statutory damages that we can elect at trial. Counsel, I'll read to you again from docket entry 347, page 23. So you're not going to make any claim, not one claim, any claim at trial for lost profits to superior. Rather, your remedy is disgorgement remedy. Superior's counsel stated that is correct, Your Honor. Your Honor, the context of that, though, is a contrasting lost loss profits to disgorgement in the in the in the landmass case and not that that not as to every count in the complaint. And there were multiple counts in the complaint. The punitive damages issues were aimed at some of the other other counts and not at the direct landmass claim, for example. My concern is that if we're looking at an abuse of discretion standard, which is really broad for the trial court, and the trial court has a box in a pretrial order, whichever one under a pretrial statement, whichever one understands is to narrow the issues. And the parties are told that this is going to be the pleadings going forward, that pleadings amend into this is told, list your damages. It's not listed. And the trial court was told shortly before that, that the only remedy is is is disgorgement. And there's no listing of statutory damages that the trial court is reasonable to conclude that the party is not seeking statutory damages. How can we say that's an abuse of discretion? Well, because, Your Honor, the court did not take the joint pretrial statement as a whole, including the attachments, which which included instructions for seeking statutory damages, which are which the rules say on statutory damages, that those can be those can be sought at any time during trial even. And there was a proposed instruction stating if we decide to seek statutory damages, here's what we're going to do. And so, you know, in this situation where where a waiver is supposed to be knowing and voluntary. Did the joint verdict form have a box for statutory damages? It did not. It just had a we just had a proposed instruction if we sought to do that. Right. So if you're looking at if you're looking at a whole and you're the trial court and you're looking at the verdict form, you're looking at the box that says state your damages, and you have a hearing where you're told that you're that there's going to be not going to be any claim for loss for statutory damages. How is it abuse and abuse of discretion for the trial court to reach that conclusion? Well, two reasons, Your Honor. First of all, if you're going to rely on the verdict form, it's controlling that we don't even have to get to the statutory damages issue because the verdict form very clearly in two different places asked for punitive damages, and that's enough to get us to a jury. So if the verdict was only after the question regarding statutory damages, but but I guess my my question to you is, if we're looking at the whole there, there's a lot for the trial court to be able to reach the conclusion that it did, which is the very definition of not abusing your discretion. Right? No, I mean, we disagree with that, Your Honor, because, you know, to say that that even though we set these out these issues out in both the jury instructions and the verdict form, you know, and even if there was an oversight in the verdict form as the statutory damages, certainly only need one of those two things to have had our entitlement to a jury trial. And if Your Honor is going to focus on the on the verdict form, please do, because the punitive damages claim is very clearly in the verdict form. And so and so for that reason, we think that this is both. We still think that the standard of use really should be a view of discretion as far as the graduate jury demand. Let's assume for the moment that I agree with you at least that the punitive damages that there's error, that there was an abuse of discretion. Let's just assume that for the moment. What evidence did you present at trial to show willfulness on behalf of on behalf of the defendant here? Significant evidence, Your Honor. We had the evidence. Well, first of all, some of our evidence was excluded. That's one of our other issues as far as the evidence of of Jennifer Steve's kiss. But despite that, we also had, for example, the testimony of defendant's own witness, Mr. Shahada, stating that Miss Steve's kiss put health print on the list of the names to be considered. That that Barb Ligoni, who had through the testimony of Miss Cullen, thank you very much. And at 1948 to 1949, was part of was an advisor on the health print project. So we do have a lot of evidence that that that that that Shaq knew about. Well, it's not whether they knew. In other words, now, as I understand the case law, knowledge of another mark is not sufficient. What needs to be sufficient is willfulness to use it for the purpose of confusion. Right. That's the willfulness inquiry. Sure, Your Honor. And we think that that knowledge is sufficient to draw an inference of willfulness and that a jury was entitled for purposes of punitive damages. It is. I mean, I'm not I'm putting aside for the moment whether it's sufficient evidence under under the intent prong of of the likelihood confusion test. But for punitive damages, that sort of inference on top of inference from someone who 10 years ago knew someone else is sufficient to to show willfulness such that punitive damages are appropriate. It's not just that someone from 10 years ago, Your Honor. Barb Ligoni was in 2006, working very closely with Ellie Cullen. There's testimony at 1743, for example, as to that. And very soon thereafter, defendants own witness to Shahada stated that that same person at 1948 was an advisor on the quote health print project with in Shackley. And so we believe that that that evidence that that that these people who were working with and trying to develop programs within health print with health with with my client with with my client's work, superiors work at first, and then turned around and develop their own. Instead, a jury could find that to be willful and find punitive damages in that situation. And the issue we have here is that we're not even to the point of of the court deciding that of the jury side that the jury should have been given the right to decide that. Unless the court has other questions, I see my time is up and I will reserve my remaining three minutes for rebuttal. Thank you, counsel. You have three. We'll hear now from Mr. Tessa. Yeah, may it please the court. Good morning. My name is John Tasso. I represent Shackley. This is the third time this case has been been before the 11th Circuit. At this point, the facts that were before the court on the motion for preliminary injunction and the district court's denial of that at the bench trial in September of 2018, they only strengthened in Shackley's favor. There was the unrefuted survey evidence of how correct, which found that there was no likelihood of confusion. The district court had that. Counsel, this is Robert Luck. I think it would be more fruitful to focus not on the evidence part and listen, argue what you want. But I know my questions are related to the bench trial issue. And so responding to your opposing counsel's arguments about why punitive damages was mentioned in the verdict form, in the jury instructions, in the pretrial statement itself, although in a different section in the damages section. And, of course, was alleged in the complaint and throughout why it was not an abuse of discretion to strike the jury trial notice with regard to punitive damages. Yes, Your Honor. On the punitive damages issue, shortly after the pretrial statement was filed, Superior made another filing. This is at Dock 257, page 5. They say, unequivocally, supposing chosen measure of damages in this case is discouragement. And so after the pretrial statement is filed, they are once again making a statement to the court in a writing about their chosen measure of damages. So that's not inconsistent with punitive damages. That's the choice between statutory and profits, right? Well, I think that when you use the word chosen, you're identifying your measure of damages. And here, the reason why it's inconsistent with punitives is the Tiger Direct and the RC Court case law that we cite to you about how punitives and equitable relief such as discouragement are mutually inconsistent. So I've dug into that a little bit, being someone who's a little interested in Florida law. And those cases, which are quite old, seem to stem from the distinction in the old Florida courts between equity judges and law judges. And it was, of course, true that an equity judge could not grant punitive damages because there was no jury trial in equity courts. They were just courts of equity. But the courts have seemed to, once the barrier between equity and law broke down in Florida and we became a unified court system, the appellate courts seem to suggest that that law was no longer a good law. I'll quote to you from Gusman v. Lieberman, a fourth DCA case from 1973. Quote, we hold that a judge who sits as a trier of fact in a case involving both legal and equitable claims may award both compensatory and punitive damages where appropriate as well as appropriate equitable relief. And specifically stating that this is contrary to the holding of RS-17 Corp. and others, which are essentially older cases and are no longer good law. So we don't have to rely. Chackley does not have to rely on the distinction between law and equity courts. The Tiger Direct case, which is obviously at the point where law and equity courts have merged, identifies that you also have different considerations. And when you're dealing with equitable relief, one of the purposes of it is to try to deter future conduct, which is one of the purposes for punitives. So that issue extends beyond that. On the punitives issue beyond that, there's a few other key points to make. First, at the point where they have chosen to not seek, their chosen remedy is disgorgement, and they're no longer seeking actual damages, they don't have a path under Florida law to get to punitive damages. And the court was referred in their reply brief to the Auld case. And Auld involved for the proposition that for some types of claims, you don't have to have a finding of actual damages in order to get to punitives. But that involved a claim for trespassing battery. The claim of unfair competition, common law, is different. And that requires proof of actual damages. And the sites for that are the CBS Inc. case. This is 622F, sub 532, and Alpha Med Pharmaceuticals, 432F, sub 2nd, 1319. And how do we know this is accurate? Why is the loss of profits not sufficient in order to show actual damages? In other words, why is disgorgement, even though it's an equitable remedy, not a legal remedy, why is that not a sufficient measure of damages such that they would support punitive damages? I fail to see why punitive damages wouldn't be appropriate under those causes of action. Now, I'm not aware of any cases where disgorgement could substitute for actual damages. Each of the cases that I cited to the court identify actual commercial damages and actual damages. Counsel, opposing counsel didn't argue that in the district court, did he? He didn't argue that he could get punitive damages on disgorgement. He did not argue that. So it wasn't presented to the district court at all. That was not presented. In Superior's instructions that they submitted to the court below on the common law claim for unfair competition, and this is at 254-7, page 78, Superior comes out and acknowledges that one of the elements of the claim for common law was actual damages to Superior. And so there's no, again, there's no path to get to punitives. And under this court's decision in Burns, this is 53rd F. 3rd, 1237, even if there was an issue as to whether there was, punitives was a basis for a jury trial, the court still needs to do an analysis of what the evidence was that supported it. And there's, again, there's no path to get there. And I want to add one other point beyond the interaction at the first part of this argument. In 254-7, this is on page 84, Superior commits to what its theory is to punitive damages. What it says is that Jennifer Stiesges, who was a Shackley employee back in 2016, wrongfully used confidential information that she learned about Superior's business model. That's what they argue. What's happened since then, well, a couple of things. First, the evidence was presented below, and it came in as defendant's 118. This is 398-16, that any confidentiality that had existed had expired in 2010 because the Procter & Gamble confidentiality agreement had a five-year duration. Since the briefing in this case closed, the Ninth Circuit actually affirmed a Rule 11 sanctions award against counsel for Superior, not the counsel here today, because they were arguing that there was a breach of confidentiality when the confidentiality agreement had expired. This is 786-FED-APPX at 648. There's simply no path to get to punitive damages, whether it's inconsistent with equitable remedy of discouragement, whether it's under Burns because there's no evidence to support it. There's no way to get to punitive damages in this case. On the statutory damages issue, the only way that statutory damages ever comes into play is if there is counterfeiting. Statutory damages are not a remedy for ordinary trademark infringement. Under the Burns analysis in this case, there is no possible way that there's counterfeiting. The reason for that is under the Gucci decision, which we cite, and this is Dock 460, in order for counterfeiting to exist, you actually have to have a stitch-per-stitch copy. In other words, Shackley would have had to have rolled out its blood testing service, which it doesn't do, it's undisputed it doesn't do, and it would have had to have called it a health threat. There's no scenario in which that happens here. In fact, the evidence simply confirmed what the 11th Circuit had already concluded in the order on the preliminary injunction, that there's no real possibility that a reasonable consumer would mistake the source of Superior's blood test request form with that of Shackley's free questionnaire, particularly where Superior's website is rife with references to the company's focus on laboratory work. When you have companies that are operating in different spaces, you can't possibly get to a counterfeiting situation where you have a knockoff Gucci bag. Under either scenario, whether it's statutory, whether it's punitive, there's certainly no error in this case that would support reversing and having another trial. The court has already pointed out that on the statutory damages issue, they had complete control over the verdict form they wanted to attach to the proposed pretrial statement. What Superior decided to ask for as the remedy, if there was counterfeiting, was disgorgement. When you combine that with the other information that the district court had at its disposal, including Superior saying that its chosen measure of damages is disgorgement, you have the statement in open court, and then you have a pretrial statement section that calls you out and asks you to specify what your damages are. They knew exactly what they wanted to put in there. They wanted to go for the shock value of putting $100 million in. They were fine. They were entitled to do that, but if you make that call, then the consequence of that is what is reflected in this court's decision in hard candy, which is there's no right to a jury trial because disgorgement is an equitable remedy. The evidence amply supported the court's finding. The case only got better from Shackley's standpoint on the factual level. As the court pointed out in its first opinion in this case, weighing the likelihood of confusion factors is reviewed under a clearly erroneous standard. There's no possible way when you have essentially the country's foremost trademark survey expert, Hal Perrette, conduct a survey showing the marks, how they're used in commerce, and concluding that there's no likelihood of confusion. There's no possible way that the district court abused its discretion. In contrast, the expert for the other side used no control group, didn't even try to show the marks the way they were used in commerce, and didn't even ask a question to the respondents that described Shackley's services. Unless the court has any other questions, I have nothing further to state at this time. Thank you, Mr. Tassa. We'll hear now the last three minutes of Ms. Waislick's argument. Thank you, Your Honor. Real briefly, I want to say, first of all, I'd like the opportunity outside of this oral argument to address the new authority that counsel's raising for the first time here in oral argument. I did not get any notice that he was going to cite to a new case, so I'm not prepared to do that, unfortunately. But secondarily, a few issues raised that I think need to be addressed. First of all- Counsel, let me start you with what is your path to punitive damages in the claims that were remaining? Yes, Your Honor. The path to punitive damages is via a claim for nominal damages for the- as set out in the proposed verdict form in two different places where we requested nominal damages, which is permissible under the alt case that we cited, and then punitive damages for both counterfeiting and for infringement of the common law statutory mark. So there is a path there. Even if we didn't quite make the exact argument, cite the exact case as the court stated, certainly the documents that were in front of the court set out that path clearly enough that should not have been found to be a waiver. I also want to address really briefly the issues of the other side's reliance on the preliminary injunction in this matter. There was significantly more evidence than there was when this trial decided the preliminary injunction, particularly on the issue of the similarity of the products that were involved. Both products at base were personalized nutritional diet and health analyses. The fact that my client was broader than that does not make it less likely to be an infringement. It shows that my client has more of a market than the other side. The other side was trying to hone in on one segment of my client's business and usurp it by using the same exact, exact mark for a very similar survey to perform the services of giving people personalized nutritional diet and health analyses. I think that's a very important distinction. It's kind of like saying to radiology things can't be confusing even if it's the same exact name because one does only x-rays, the other one does x-rays and cat scans. Just because we provide more services and do use the blood testing services doesn't mean that at base the services aren't identical within this kind of a circle within a circle. I do want to address also briefly the survey evidence issue because, frankly, the trial court did put a lot of weight on the other side's survey and exclude ours erroneously. Notably, the jelly beans case says that the issues that they raised regarding the survey here are all issues that should go to weight and not admissibility. The other side doesn't even mention jelly beans in its brief. It's not even cited. They don't address that issue at all even though we briefed it completely. We cited at page 78 of our initial brief several cases where Middle District of Florida cases and Southern District of Florida cases and others citing jelly beans for this proposition that our survey should have been admissible and that would have been additional evidence of actual confusion. Then finally, most importantly, on the actual confusion piece of the analysis, the court really misapplied the law by saying the lack of actual confusion heavily weighs against Superior for two reasons. First of all, factually it was erroneous to say that there was lack of actual confusion when we provided testimony of more than 50 calls to Superior through Carol Guff at 1420 to 1423. Arlen Sanderson, one of the other side's people at 2356, with a contemporary email showing that confusion, we had the testimony of Frank Murphy and the survey that was excluded. But more importantly, the case law makes very clear that actual confusion is not a prerequisite to finding likelihood of confusion. Sure, when you have it, which we did, it is a strong showing of confusion. But even without it, you can find likelihood of confusion. That just makes sense because the rule is likelihood of confusion. So unless the court has any other questions, we'll rely on our brief. And I thank you for your time. Thank you, Ms. Walsh. We'll take that case under submission and stand in recess until tomorrow morning. Thank you, Your Honors.